IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JERRY LEWIS FLOWERS, | ) |
| Plaintiff, | ) |
| v. | ) CV 112-119 |
| DENNIS BROWN, Warden, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on November 8, 2012, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff

was directed to file an amended complaint. (Doc. no. 11.) On November 27, 2012, Plaintiff submitted an amended complaint but failed to sign it as required by Fed. R. Civ. P. 11(a). (See doc. no. 13.) Thus, the Court ordered Plaintiff to resubmit his amended complaint along with an appropriate signature. (Doc. no. 14.) Plaintiff timely submitted a properly signed amended complaint on December 6, 2012, and it is this document that the Court will now screen. (Doc. no. 15.) Notably, the Court will screen Plaintiff's properly signed amended complaint in conjunction with the exhibits that Plaintiff provided with the first, unsigned copy of his amended complaint. (See doc. no. 13, pp. 6-24.)

I.  **BACKGROUND**

Plaintiff names the following Defendants in his complaint: (1) Dennis Brown, the Warden at ASMP; (2) Scott Wilkes, the Deputy Warden of Care and Treatment at ASMP; (3) Randy Brown, a medical administrator at ASMP; (4) Bill Nichols, another medical administrator at ASMP; (5) Shirley Martin, the Nurse Director at ASMP, "and subordinates;" and (6) "Augusta State Medical Prison employees, et al." (Doc. no. 15, pp. 1, 4.)

Plaintiff first alleges that, after being transferred to ASMP on September 13, 2011, he asked four different unknown nurses between September 13, 2011, and September 17, 2011, for his blood thinning, seizure, and high blood pressure medications during routine pill calls, but was told on each occasion that they did not have his medication and would be

2

unable to procure it.[1] (Id. at 2.) Plaintiff alleges that, on September 15, 2011, he told an officer that he had an emergency medical problem, and that the officer then called the medical unit to inquire about Plaintiff's medication. (Id.) Plaintiff alleges that the officer was informed by Defendant Martin, whom Plaintiff refers to as a "nurse supervisor," that the pharmacy did not have Plaintiff's medications. (Id.) Plaintiff asserts that, despite Defendant Martin's indication that the pharmacy did not have his medications, those medications were transferred with him when he was moved to ASMP from Hancock State Prison on September 13, 2011. (Id.) Plaintiff has submitted as an exhibit an "Intrasystem Transfer Form" showing that five of his medications were packaged and sent on September 12, 2011, and received on September 13, 2011. (Doc. no. 13, pp. 11-2.) Plaintiff alleges that Defendant Martin did not respond any further, and that, as previously noted, he was without his medications for a total of five days. (Doc. no. 15, p. 2.) Plaintiff asserts that Defendant Martin acted with deliberate indifference to his serious medical needs and, furthermore, that she is liable for his alleged injuries due to her "[personal participation] in the alleged constitutional conduct of [her] subordinates," because she "failed to correct the alleged deprivation," and because she knew her subordinates would act unlawfully and failed to stop them from doing so. (Id.)

Plaintiff next alleges that, on September 20, 2011, he was taken to the medical unit

---

[1] Notably, a significant portion of the language that Plaintiff uses to describe his claims in his amended complaint is taken verbatim from the Court's November 8th Order summarizing Plaintiff's claims and directing him to amend based on pleading deficiencies. (Doc. no. 7.)

3

due to excessive sweating, severe pain in his leg, and high blood pressure. (Id.) Plaintiff alleges that, after an unknown physician's assistant checked his leg for circulation and was unable to find a pulse, he was taken to the Medical College of Georgia Hospital on September 22, 2011. (Id. at 3.) Plaintiff alleges that, while there, a "Dr. Argarwah" conducted tests and determined that there were clots in his leg due to the five-day gap in his medication. (Id.) Plaintiff alleges that, accordingly, he underwent surgery to have the clots removed. (Id.)

Plaintiff next alleges that he was placed in the nursing unit upon his return to ASMP on September 28, 2011. (Id.) Plaintiff alleges that, on October 3, 2011, he filed an informal grievance "against" Defendants Brown and Wilkes concerning the above-described events, that Defendant Wilkes "received and completed" the informal grievance on October 12, 2011, and that the grievance was ultimately rejected. (Id.) The memorandum rejecting Plaintiff's informal grievance explains that the grievance was rejected because it proffered a "non-grievable issue" and because Plaintiff did not specify the dates related to his claim, which he was required to do in order for Defendant Wilkes to investigate. (Doc. no. 13, p. 6.) Plaintiff alleges that Defendants Brown and Wilkes were thus "placed on notice of the need to correct the allege[d] deprivation," but that, based on ensuing events, they failed to do so. (Doc. no. 15, p. 3.) As to those ensuing events, Plaintiff alleges that he did not receive his medication between October 11, 2011 and October 14, 2011, at which point he

was again taken to the Medical College of Georgia and "prepared for a surgical procedure to remove clots in arteries in leg." (Id.)

Notably, the remainder of Plaintiff's amended complaint simply asserts that each Defendant is liable in his supervisory capacity for the actions of his or her subordinates and, in doing so, restates and attempts to generally apply the legal factors for supervisory liability that were laid out in the Court's November 8th Order directing Plaintiff to amend his complaint. (See id. at 4.) In particular, the Court notes that Plaintiff's only mention of Defendants Brown and Nichols outside of the caption of the complaint is to state that they "oversee [the] medical department." (Id.) Moreover, Plaintiff's amended complaint does not contain a request for relief.[2]

## II. DISCUSSION

### A. No Claim for Deliberate Indifference to Serious Medical Need

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for deliberate indifference to a serious medical need against Defendant Martin and her subordinates, the only named Defendants against whom Plaintiff alleges personal – rather than supervisory – liability.

---

[2]The Court notes that, although Plaintiff was provided with the standard form complaint used by incarcerated *pro se* litigants in the Southern District of Georgia when the Court directed him to amend his complaint (see doc. no. 11, p. 5), Plaintiff opted not to use that form and instead hand-wrote his amended complaint (see generally doc. no. 14).

5

Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires that a prison official disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To state a viable Eighth Amendment claim,

Plaintiff must allege that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams, 61 F.3d at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, Plaintiff has failed to adequately allege that Defendant Martin acted with deliberate indifference to his serious medical needs. As noted above, Defendant Martin, whom Plaintiff alleges informed an unknown officer on September 15, 2011 that the pharmacy did not have Plaintiff's medication, is the only Defendant that Plaintiff specifically mentions in direct connection to his claims outside of Defendant Martin's subordinates. (Doc. no. 15, p. 2.) The remainder of the named Defendants are only mentioned insofar as Plaintiff asserts that they are liable for his injuries due to their supervisory positions or because, in the case of Defendants Brown and Wilkes, Plaintiff "put them on notice" of his serious medical needs by filing an informal grievance.[3] (Id. at 3-4.) However, Plaintiff fails to allege that Defendant Martin was actually aware of any serious medical need to which she

---

[3] As explained infra Part II.B, the doctrine of *respondeat superior* bars Plaintiff from holding supervisors liable for the actions of their subordinates.

then acted with deliberate indifference. The extent of Defendant Martin's involvement in the circumstances that Plaintiff alleges is that she answered the phone when an unknown officer called the medical unit in response to Plaintiff's complaint of an "emergency medical problem," and that she then informed the officer, in response to the officer's question "about missed medications," that the pharmacy did not have Plaintiff's medications. (Id. at 2.) Plaintiff does not allege the Defendant Martin had any knowledge whatsoever of the specific circumstances of his medical need, much less that she was aware that, in the absence of his medication, Plaintiff would accumulate clots in his leg for which he would have to undergo surgery. Put simply, Plaintiff has not alleged sufficient facts to show that Defendant Martin had knowledge of Plaintiff's serious medical need and then acted with the sort of gross incompetence that might support a claim for deliberate indifference. Adams, 61 F.3d at 1544.

Plaintiff's allegation that Defendant Martin "did not respond back" after the September 13th phone call is equally unavailing in terms of demonstrating deliberate indifference. (Doc. no. 15, p. 2.) Plaintiff does not provide any explanation for his implication that Defendant Martin was expected to "respond back" to anything; he does not allege, for instance, that Defendant Martin told the officer or Plaintiff that she would investigate as to the whereabouts of Plaintiff's medications and then communicate the results. In fact, as noted above, the extent of Defendant Martin's involvement with

8

Plaintiff's alleged events is markedly brief: according to Plaintiff's statement of facts, Defendant Martin simply picked up the phone when the officer called the medical unit and succinctly answered a question. (Id.) In sum, Plaintiff has failed to state a claim against Defendant Martin for deliberate indifference to a serious medical need.

Plaintiff also fails to state a claim for deliberate indifference against Defendant Martin's "subordinates," whom the Court presumes are the four unknown nurses that Plaintiff alleges he spoke to during pill call concerning the whereabouts of his medication. (Doc. no. 15, p. 2.) As with Defendant Martin, Plaintiff does not allege that any of the four nurses had any actual knowledge of his serious medical need, but instead asserts that he simply asked each nurse on a different occasion for his medication and was told in response that the medication was unavailable. (Id.) He does not, for example, allege that he explained the situation to the nurses such that they were aware that he had an immediate need for his medication and that, without it, he would incur serious injuries and be required to undergo surgery. Without any subjective awareness of Plaintiff's serious medical need, the unknown nurses could not have then acted with deliberate indifference towards that unspecified medical need. Thomas, 614 F.3d at 1304. Similarly, as explained more fully infra, Plaintiff cannot impute any such awareness onto Defendant Martin in order to hold her liable for his alleged injuries where, as here, no such awareness existed on the part of the subordinate nurses. In sum, Plaintiff has also failed to state a claim against the four unknown nurses –

Defendant Martin's subordinates, as vaguely identified in the caption of the amended complaint – for deliberate indifference to a serious medical need.

### B. No Supervisory Liability Against Defendants

Plaintiff's claims against Defendants are also inadequate to the extent that Plaintiff is attempting to hold them responsible for the alleged acts of unnamed prison employees. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisory officials cannot be sued under § 1983 simply on a theory of *respondeat superior*. To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, other than Defendant Martin, against whom Plaintiff also asserts supervisory liability, Plaintiff mentions Defendants Brown, Wilkes, and Nichols only briefly in his complaint and fails to show that those Defendants actually participated in any purported constitutional violation. Moreover, Plaintiff does not make any effort to explain his broad inclusion of "Augusta State Medical Prison Employees, et al." in the caption of his

complaint, nor does he otherwise mention that group outside of the caption.[4] Similarly, Plaintiff fails to allege a "causal connection" between any of the named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act

---

[4]The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendant "Augusta State Medical Prison Employees, et al.," Plaintiff fails to state a claim for relief against that Defendant. To the extent that Plaintiff's intent is for that Defendant group to simply encompass the other Defendants that he has specifically named in this lawsuit, each of whom are employed at ASMP, Plaintiff's allegations against those Defendants have already been addressed, or will be addressed, herein.

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

11

unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff generally asserts that Defendants Brown, Wilkes, Nichols, and Martin each knew that their subordinates would act unlawfully, but he conspicuously fails to provide any support whatsoever for that conclusory allegation. (Doc. no. 15, p. 4.) As to Plaintiff's assertion that Defendants Brown and Wilkes were "put on notice" by the informal grievance that Plaintiff filed, that claim is equally unavailing; of those two Defendants, only Defendant Wilkes, as the Deputy Warden of Care and Treatment and the ostensible letter-writer of the rejection notice, had any arguable knowledge of Plaintiff's claim, and Defendant Wilkes determined that the issue was non-grievable due to Plaintiff's failure to provide specific dates.[6] In fact, the informal grievance was filed on October 3, 2011, after Plaintiff's initial visit to the hospital but prior to his second visit, and made no mention of any then-current serious medical need of which Defendant Wilkes could have been aware. (Doc. no. 13, p. 7.) Moreover, as noted above, Plaintiff has not demonstrated that liability should attach to

---

[6]Moreover, Plaintiff does not satisfy his burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims simply by alleging that he filed a grievance. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Defendant Martin based on the actions of her subordinates, the four unknown nurses whom Plaintiff alleges informed him during pill calls that his medication was unavailable. As the Court explained <u>supra</u> Part II.A, Plaintiff has failed to state a claim for deliberate indifference on the part of those nurses. In the absence of any underyling liability on the part of her subordinates, it logically follows that there is no valid claim stemming from the actions of those subordinates for which Defendant Martin could thus be held accountable based on supervisory liability.

Finally, the Court notes that Plaintiff's claims concern two separate periods of time during which he was denied his medication, one lasting four days and one lasting five days, and each having taken place during 2011. Two isolated periods of time during which Plaintiff was not given his medication does not equate to the sort of "widespread abuse" that is "rampant" and "of continued duration" that Plaintiff must show in order to hold Defendants responsible for the acts of their employees, especially where, as here, whatever problem might have existed does not appear to be in any way ongoing. <u>Brown</u>, 906 F.2d at 671. In other words, Plaintiff's allegations constitute the sort of "isolated occurrences" that do not demonstrate widespread abuse for purposes of determining supervisory liability. <u>Brown</u>, 906 F.2d at 671. Thus, Plaintiff has not made the necessary showing with respect to Defendants.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this ___ day of January, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE